JOURNAL/SENTINEL, INC., Bruce Gill, Michael Bayer and Lawrence Sussman, Plaintiffs-Respondents,

v.

SCHOOL BOARD OF the SCHOOL DISTRICT OF SHOREWOOD, Amy Lewis, in her capacity as Shorewood School Board President, John L. Linehan, in his capacity as School District Acting Superintendent, von Briesen & Purtell, S. C., in its capacity as Shorewood School District Agent and Attorney, Defendants-Appellants.†

Court of Appeals

*No. 93–3106. Oral argument July 6, 1994.—Decided July 19, 1994.*

(Also reported in 521 N.W.2d 165.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael J. Morse, Warren L. Kreunen,* and *Brent P. Benrud* of *von Briesen & Purtell, S.C.*, of Milwaukee. There was oral argument by *Michael J. Morse.*

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *Dennis L. Fisher* of *Meissner & Tierney, S.C.*, of Milwaukee. There was oral argument by *Dennis L. Fisher.*

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

FINE, J. This is an appeal from the trial court's grant of summary judgment in favor of the publisher of Milwaukee's two newspapers of general circulation and three of its employees, directing the Board of Directors of the School District of the Village of Shorewood, the board president, the school district's acting superintendent, and the school board's attorneys to release, under Wisconsin's public records law, §§ 19.31-19.37, STATS., a document entitled "Memorandum of Understanding," which recited the settlement terms of a lawsuit between the school board and a former superintendent of the Shorewood school district. We affirm.

## I.

In November of 1991, the school district's superintendent, Lynne Moore, sued the district and members of the school board, alleging breach of contract and

defamation. The case was settled and the settlement was approved by the school board at its meeting on August 20, 1992. A stipulation for "voluntary withdrawal" of Moore's action, and an order for dismissal was filed in court on August 21, 1992. Throughout the proceedings, Moore was represented by the Milwaukee law firm of Shindell and Shindell, and the district and the school-board members were represented by the Milwaukee law firm of von Briesen and Purtell.

Although the settlement agreement was ostensibly oral, it was memorialized by the "Memorandum of Understanding," access to which is sought by the publisher and its employees in this lawsuit. This "Memorandum of Understanding" is dated August 20, 1992, and was signed on behalf of the defendants in Moore's suit by Timothy Dugan, then of the von Briesen firm, at the direction of the school board. It was also signed by Anne Shindell, one of Moore's lawyers, on Moore's behalf.

An original signed copy of the "Memorandum of Understanding" is at the von Briesen firm. Although copies of the "Memorandum of Understanding" were given to each school-board member on August 20 prior to the board's discussion and approval of the settlement, the copies were retrieved from the school-board members before the meeting ended.

The "Memorandum of Understanding" is the final version of a document that, as reflected by the appellate record, went through twenty drafts by von Briesen lawyers. At least some of the drafts were discussed with the Shindell firm as part of the ongoing settlement negotiations, and were modified in accordance with those negotiations. The final typed version of the "Memorandum of Understanding" brought by the von Briesen firm to the school-board meeting on August 20

was itself modified by handwritten changes as the result of last-minute negotiations.

There is no doubt from this record but that the "Memorandum of Understanding" played a significant role in the settlement process and is the final document that reflects the settlement terms. Indeed, the then president of the school board, Amy Lewis, testified at her deposition that she relied on the "Memorandum of Understanding" in assessing and approving the settlement. Further, in announcing its oral decision, the trial court noted that the "Memorandum of Understanding" contains the following language, as read into the record by the trial court, immediately preceding the terms of the agreement: "The board and Moore have agreed for good and sufficient consideration as follows, colon," and that the "Memorandum of Understanding" concludes:

> The parties to the settlement have been advised by their attorneys of all the constituent parts of the settlement and to the provisions in this memorandum. The parties reviewed this memorandum with their legal counsel, acknowledge it is an accurate and complete representation of their settlement, and is binding upon them although not personally signed. The parties have directed their attorneys as their authorized agents to execute this Memorandum of Understanding in duplicate on their behalf and have directed their attorneys to file one duplicate original in each of their respective professional offices.

One of settlement's terms was that the terms themselves would remain secret.

## II.

It is the settled policy in this state that, subject to extremely narrow and well-defined exceptions, the

447

workings of government are open to public scrutiny. The legislature has consistently reaffirmed this fundamental right in various contexts:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes [*sic*] who represent them.

Section 19.31, STATS. (public records).

> In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business.

Section 19.81(1), STATS. (open meetings).

> The sittings of every court shall be public and every citizen may freely attend the same, except if otherwise expressly provided by law on the examination of persons charged with crime; provided, that when in any court a cause of a scandalous or obscene nature is on trial the presiding judge or justice may exclude from the room where the court is sitting all minors not necessarily present as parties or witnesses.

Section 757.14, STATS. (court proceedings). Wisconsin's tradition of openness in government reflects the truism, expressed by Jeremy Bentham more than one-hundred and fifty years ago, that "[w]ithout publicity, all other checks are insufficient." 1 Jeremy Bentham, RATIONALE OF JUDICIAL EVIDENCE 524 (1827), *quoted in*

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980).

This case is governed by the public records law, §§ 19.31-19.37, STATS., and the legislatively mandated "presumption of complete public access," § 19.31, STATS.; *see also Oshkosh Northwestern Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 482, 373 N.W.2d 459, 461 (Ct. App. 1985). Although § 19.31 recognizes that there may be circumstances where the "conduct of public business" requires that public access to the records be denied or restricted, it commands: "The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." *Ibid.*[1] The flat rule is that any person who seeks access to "any" public record "has a right to inspect" that record, unless the law otherwise provides.[2] The school

---

[1] Section 19.31, STATS., provides in full:

**Declaration of policy**. In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes [*sic*] who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employes [*sic*] whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

[2] Section 19.35(1)(a), STATS., provides in full:

Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a govern-

board appellants recognize this policy, but nevertheless contend that the "Memorandum of Understanding" is protected from disclosure. We analyze their contentions, which, because they present issues of law and the facts are not in dispute, we decide *de novo. See Oshkosh Northwestern*, 125 Wis. 2d at 485, 373 N.W.2d at 462.[3]

mental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.

A "requester" is "any person who requests inspection or copies of a record." Section 19.32(3), STATS.

[3] As a preliminary matter, we note that the publisher contends that the school board's response to the publisher's request for access to various records relating to the settlement of Moore's lawsuit was insufficient. *See* § 19.35(4), STATS. ("If an authority denies a written request in whole or in part, the requester shall receive from the authority a written statement of the reasons for denying the written request."); *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 682, 137 N.W.2d 470, 475 (1965) (custodian of record to which public access is denied must "state specifically the reasons" for the denial) (applying common-law principles, the vitality of which is preserved by § 19.35 (1)(a), STATS.), *opinion modified on other grounds*, 28 Wis. 2d at 685a, 139 N.W.2d 241 (1966). We disagree.

A custodian's response that denies public access to a record is sufficiently specific if the response gives "a public policy reason that the record warrants confidentiality." *Journal/Sentinel, Inc. v. Aagerup*, 145 Wis. 2d 818, 823, 429 N.W.2d 772, 774 (Ct. App. 1988). A "detailed analysis" of the record or of the reasons why the custodian believes that disclosure would not be in the public interest, however, is not required. *Ibid.* Here, some of the requested documents were either produced or did not exist. The school board's partial deni-

**A.** *Whether the "Memorandum of Understanding"
is a "record" subject to public disclosure.*

The public-records law defines "record" as "any
material on which . . . information is recorded or pre-
served, regardless of physical form . . . which has been
created or is being kept by an authority." Section
19.32(2), STATS.[4] An "authority" is defined by the pub-
lic-records law as, *inter alia,* any "state or local office,

---

als asserted the following grounds: the documents were not
"records" as defined by the public-records law, the documents
were protected by "a pledge of confidentiality," the documents
were protected by the attorney-client privilege and the work-
product doctrine, the documents were protected by "[b]alancing
the interest to the public to access to such records and the harm
to the public by disclosure." In connection with this latter rea-
son, the school board explained that in its view, it was in the
public's "best interests" that the "documents not be disclosed
because the matter involves sensitive personnel related infor-
mation which the legislature recognizes may be kept
confidential and the desirability of resolving disputes by agree-
ment rather than litigation." The school board's reasons were
sufficiently specific, albeit not legally valid in the context of this
case.

[4] Section 19.32(2), STATS., provides in full:

"Record" means any material on which written, drawn,
printed, spoken, visual or electromagnetic information is recorded
or preserved, regardless of physical form or characteristics, which
has been created or is being kept by an authority. "Record"
includes, but is not limited to, handwritten, typed or printed pages,
maps, charts, photographs, films, recordings, tapes (including com-
puter tapes), computer printouts and optical disks. "Record" does
not include drafts, notes, preliminary computations and like
materials prepared for the originator's personal use or prepared by
the originator in the name of a person for whom the originator is
working; materials which are purely the personal property of the
custodian and have no relation to his or her office; materials to
which access is limited by copyright, patent or bequest; and pub-
lished materials in the possession of an authority other than a

elected official, agency, board, commission, committee, council, department or public body corporate and politic created by constitution, law, ordinance, rule or order." Section 19.32(1), STATS.[5] The school board appellants contend that the "Memorandum of Understanding" is not a "record," and base this contention on two footings: that the "Memorandum of Understanding" was neither created nor is being kept by an "authority." Rather, they argue, the "Memorandum of Understanding" was drafted largely by von Briesen with input from Moore's counsel, and point out that the document is ensconced in von Briesen's files.

■

Although von Briesen is a private law firm, and not itself an "authority," the record is undisputed that it drafted and has maintained custody of the "Memorandum of Understanding" as attorney for the school board, which *is* an "authority" under the public-records law. The school board appellants' argument thus resolves to whether a public body may avoid the

public library which are available for sale, or which are available for inspection at a public library.

[5] Section 19.32(1), STATS., provides in full:

"Authority" means any of the following having custody of a record: a state or local office, elected official, agency, board, commission, committee, council, department or public body corporate and politic created by constitution, law, ordinance, rule or order; a governmental or quasi-governmental corporation except for the Bradley center sports and entertainment corporation created under ch. 232; any public purpose corporation, as defined in s. 181.79(1); any court of law; the assembly or senate; a nonprofit corporation which receives more than 50% of its funds from a county or a municipality, as defined in s. 59.001(3), and which provides services related to public health or safety to the county or municipality; a nonprofit corporation operating an ice rink which is owned by the state; or a formally constituted subunit of any of the foregoing.

public access mandated by the public-records law by delegating both the record's creation and custody to an agent. Posing this question provides its answer: it may not. Indeed, § 19.36(3), STATS., specifically provides that access is to be granted to "any record produced or collected under a contract entered into by the authority . . . to the same extent as if the record were maintained by the authority." Thus, in *Fox v. Bock*, 149 Wis. 2d 403, 438 N.W.2d 589 (1989), the court assumed without discussion that a report prepared by a private consulting firm at the request of a government agency was not excluded from the definition of record because the report was neither prepared directly by the agency nor kept in its custody.[6] The school board appellants argue, however, that § 19.36(3) does not apply because von Briesen's contract with the board was to provide legal services and not the "Memorandum of Understanding." This attempted distinction is without merit; the document was produced during the course of von Briesen's representation of the district, and was, in effect, the culmination of that representation. Furthermore, as we discuss below, von Briesen's actions on behalf of the district were actions by the district for the purposes of the public-records law.

■

A lawyer retained by a client is the client's agent for the purposes of the retention agreement. *See Groom v. Professionals Ins. Co.*, 179 Wis. 2d 241, 250 n.3, 507 N.W.2d 121, 125 n.3 (Ct. App. 1993) ("A party is bound

---

[6] The court thus rejected an argument to the contrary in the *amicus* brief submitted by the Wisconsin Counties Association. Brief for *amicus* Wisconsin Counties Assn. at 4-6, *Fox v. Bock*, 149 Wis. 2d 403, 438 N.W.2d 589 (1989) (No. 87-1853). As seen from our discussion of *Fox*, below, the court focussed on whether the report was a "draft" as that word is used in § 19.32(2), STATS.

by the acts of her lawyer-agent and has notice of all facts in the possession of her attorney."); *see also, e.g., Pioneer Inv. v. Brunswick,* 507 U.S. —, 113 S. Ct. 1489, 1499 (1993) (party chargeable with attorney's neglect); *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 92-93 (1990) (receipt by attorney of Equal Employment Opportunity Commission right-to-sue letter is receipt by client). Thus, for example, statements made by counsel during the course of his or her representation of the client are admissible against the client at trial under the federal version of RULE 908.01(4)(b)4, STATS., Fed. R. Evid. 801(d)(2)(D).[7] *See, e.g., Sunkyong Int'l., Inc. v. Anderson Land & Livestock Co.,* 828 F.2d 1245, 1249 n.3 (8th Cir. 1987) (abandoned or superseded pleading may be introduced as the party's admission); *United States v. McKeon,* 738 F.2d 26, 30-34 (2d Cir. 1984) (attorney's opening statement in first trial admissible against client in second trial). There is no doubt but that the "Memorandum of Understanding" would be a "record" under the public-records law if it were either "created" or "kept" by the school board, its officers, or employees. *See* § 19.32(2), STATS. Delegating either of those responsibilities to outside counsel does not thereby remove the document from the statute's definition of "record." *Cf. Upjohn Co. v. United States,* 449 U.S. 383, 396 (1981) (turning otherwise discoverable documents over to counsel does not thereby enrobe them with an attorney-client privilege). Indeed, counsel for the school board appellants admitted on oral argument that, absent questions revolving around the

---

[7] Fed. R. Evid. 801(d)(2)(D) provides: "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

applicability of an attorney's lien, the von Briesen firm would have to deliver the "Memorandum of Understanding" to the law firm's client, if so requested. *Cf.* § 19.21(1), STATS. (An officer of a school district "is the legal custodian of . . . all property and things . . . the possession or control of which the officer or the officer's deputies may be lawfully entitled, as such officers."). von Briesen's creation and retention of custody of the "Memorandum of Understanding" is attributable to the school board to the same extent as if the document were created or kept by school board personnel. It is a "record" subject to disclosure under the public-records law.

**B.** *Whether the "Memorandum of Understanding" is a "draft" excepted from the mandate of public disclosure.*

Section 19.32(2), STATS., excludes the following from the definition of "record": "drafts, notes, preliminary computations and like materials prepared for the originator's personal use or prepared by the originator in the name of a person for whom the originator is working." The school board appellants argue that the "Memorandum of Understanding" falls within this category. We disagree.

■

The only case in Wisconsin to discuss what qualifies as a "draft" under § 19.32(2), STATS., is *Fox v. Bock*, 149 Wis. 2d 403, 438 N.W.2d 589 (1989). There, a consultant's report commissioned by the Racine Corporation Counsel's office was held not to be a "draft" even though it had not been put into final form when used by the commissioning agency. *Id.*, 149 Wis. 2d at 405, 417, 438 N.W.2d at 590, 594. The key factor in *Fox*'s determination was that the agency used the

report for the purposes for which it was commissioned. *Id.*, 149 Wis. 2d at 413, 438 N.W.2d at 594. By the same token, the "Memorandum of Understanding" at issue here was signed by both the school board's attorney and the attorney for Moore, and it was used by the school board during the August 20 meeting at which the settlement was approved. It was the final document that reified the terms of the oral agreement between Moore and the school board settling Moore's lawsuit, and recited that it was "an accurate and complete representation" of that settlement. It was not a "draft" as that term is used in the public-records law.

## C. *Balancing of interests.*

The school board appellants argue that "[e]ven if" the public-records law applies, a balancing of interests requires deference to what their brief calls the board's "pledge of confidentiality."[8] *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 681-682, 137 N.W.2d 470, 474

---

[8] The brief submitted to us by the school board appellants argues that "a clear and unambiguous pledge of confidentiality was made" at Moore's request, and that Moore's suit "could not have been settled . . . absent the pledge." The record references given to us by the school board appellants as support for this assertion are less clear than the brief implies. At the first reference, Lewis testified at her deposition: "I believe that we had agreed to confidentiality regarding — I may be mistaken." After an off-the-record discussion, the publisher's attorney asked the following question: "Was the idea of making the terms confidential an idea that was requested by Dr. Moore and her attorney, or was that requested by the School Board?" Lewis replied: "By Dr. Moore and her attorney." At the other record reference, the school board attorney's deposition testimony merely states that "the document signed by the attorneys" (presumably the "Memorandum of Understanding") contained terms of the settlement and a confidentiality agreement.

(1965) (pledge of confidentiality may preclude public access) (applying common-law principles, the vitality of which is preserved by § 19.35(1)(a), STATS.). This balancing is a legal issue that we decide *de novo*. *Village of Butler v. Cohen*, 163 Wis. 2d 819, 829, 472 N.W.2d 579, 581 (Ct. App. 1991).

The interests to be balanced are, on the one hand, the "harm to the public interest by disclosure," and, on the other hand, "the public interest in inspection." *Id.*, 163 Wis. 2d at 829, 472 N.W.2d at 583; *see also Youmans*, 28 Wis. 2d at 681-682, 137 N.W.2d at 474-475. Accordingly, that one or both parties might prefer that the terms of the settlement agreement remain confidential, or that confidentiality might serve *their* interests, is not material to our consideration unless those factors significantly affect the public interest. Thus, *Youmans* recognized that for a pledge of confidentiality to prevent access to information given to a government agency by a private party, the information must have been otherwise not available to the agency. *See id.*, 28 Wis. 2d at 681-682, 137 N.W.2d at 474.[9] *See also* 60 Op. Att'y Gen. 284, 288-289 (1971) (Access may be denied "where information was obtained under official pledge of confidentiality, and where the information could not otherwise have been obtained by the governmental agency.").

The school board appellants posit that a government agency's ability to throw a promise of

---

[9] *Youmans'* example was drawn from *City & County of San Francisco v. Superior Court*, 238 P.2d 581 (1951) (applying a "public interest" exception to the mandate that public records be disclosed), where the information would not have been given to the government agency unless confidentiality was promised. *See id.*, 238 P.2d at 584.

457

confidentiality into the pot of settlement negotiations might help expedite the settlement process and, perhaps, spur settlements that might otherwise be impossible. Thus, according to their argument, the ability to shield settlements from public scrutiny advances the public interest because settlements are in the public interest. This argument misconstrues the narrow exception recognized by *Youmans*. The focus is on the information disclosed to a government agency under a pledge of confidentiality—not on collateral matters. There is nothing in the record here that indicates that there is any information in the "Memorandum of Understanding" that would have been withheld from the school board, and not otherwise available to it, if the school board had not pledged to keep the information secret. Furthermore, if the school board's argument were accepted, public scrutiny of most if not all settlement agreements involving government would be barred—promises of confidentiality would then be *de rigueur*. This would effectively end-run the openness mandated by Wisconsin's public-records law, and the presumption of access. If a lawsuit cannot be settled unless its terms are kept secret, the case will go to trial, where, absent special circumstances, public access is the rule, *see* § 757.14, STATS.[10]

The presumption that public records in Wisconsin are open to the public is not outweighed by whatever benefits may have accrued to the public as the result of the Shorewood district's promise to Moore that the terms of the settlement would not be disclosed to the public. Moore's truncated tenure with the Shorewood school district is obviously a matter of public concern;

---

[10] There are circumstances where secrecy serves the public interest. *See, e.g.,* § 134.90, STATS. (trade secrets); *see also* § 19.36, STATS.

at the very least it reflects on the competence of those district officials and employees who hired Moore, and on those who sought to terminate her employment with the district. All officers and employees of government are, ultimately, responsible to the citizens, and those citizens have a right to hold their employees accountable for the job they do. As the attorney general explained nearly a decade ago:

> [T]he main purpose of the public records law is to enable the citizenry to monitor and evaluate the performance of public officials and employes [sic]. If information relating to a settlement and the underlying personnel dispute are kept confidential, the public is deprived of this ability. For this reason the pledge of confidentiality itself is troublesome because the custodian making the pledge is purporting to grant an exception to the public records law. This is particularly troublesome when the settlement involves the payment of money by the government. The public's interest in such information is generally great.

74 Op. Att'y Gen. 14, 16 (1985). *See also Youmans*, 28 Wis. 2d at 685, 137 N.W.2d at 475 (public interest is served by exposing dereliction in duty by public official). Further, the settlement of Moore's suit obviously involved the expenditure of public money—either directly or indirectly (*via* insurance coverage). Taxpayers of a community have the right to know how and why their money is spent. The public interest is not served by keeping the "Memorandum of Understanding" secret.

**D.** *Attorney-client privilege.*

The school board appellants also claim that disclosure of the "Memorandum of Understanding" would breach the attorney-client privilege between the district and the von Briesen firm. This argument is without merit. The privilege applies only to confidential communications from the client to the lawyer; it does not protect communications from the lawyer to the client unless disclosure of the lawyer-to-client communications would directly or indirectly reveal the substance of the client's confidential communications to the lawyer. 2 Jack Weinstein & Margaret Berger, WEINSTEIN'S EVIDENCE, ¶ 503(b)[03] n.5 at 503-56 to 503-57 (1991); *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984); *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-359 (D. Mass. 1950). There has been no showing that the "Memorandum of Understanding" falls within this rule.[11]

*By the Court.*—Order affirmed.

[11] The school board appellants have not briefed the argument based on the work-product doctrine. It is thus abandoned. *See Reiman Assocs. v. R/A Advertising*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981).