JUNEAU COUNTY STAR-TIMES and George Althoff,
Plaintiffs-Appellants,

v.

JUNEAU COUNTY and Kathleen Kobylski,
Defendants-Respondents.†

Court of Appeals

*No. 2010AP2313. Submitted on Briefs May 11, 2011.
—Decided October 27, 2011.*

2011 WI App 150

(Also reported in 807 N.W.2d 655.)

† Petition for review granted 2-23-12.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Christa Westerberg* and *Pamela R. McGillivray* of *McGillivray Westerberg & Bender LLC*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Joseph P. Wright* and *Bryan Kleinmaier* of *Stafford Rosenbaum LLP*, Madison.

Before Lundsten, P.J., Sherman and Blanchard, JJ.

¶ 1. BLANCHARD, J. The Juneau County Star-Times, a twice-weekly newspaper, appeals a circuit court judgment dismissing its complaint against Juneau County for relief under the statutes governing public records in Wisconsin, Wis. Stat. §§ 19.31–39 (2009–10).[1] The parties dispute whether the "contractors' records" provision, § 19.36(3), applies to invoices

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

generated by the County's insurance defense counsel.[2] Section 19.36(3) requires disclosure, upon request, of records produced or collected under a contract with a governmental body. The parties also dispute whether information that the County redacted from the invoices is justified by the attorney-client privilege.

¶ 2. The circuit court concluded that WIS. STAT. § 19.36(3) does not apply to the invoices and that, even if it did, the County properly produced the invoices, except as they were necessarily redacted to protect the attorney-client privilege. We conclude: (1) § 19.36(3) applies to the invoices as records collected by the insurer under the contract of insurance, and (2) the County failed to point to evidence sufficient to survive summary judgment on the question of whether its redactions qualify as attorney-client privileged information. Accordingly, we reverse and remand for the circuit court to order the County to make available to the Star-Times unredacted copies of the invoices.

## BACKGROUND

¶ 3. The following facts are undisputed. Juneau County was insured by Wisconsin County Mutual Insurance Corporation (the insurer) under a public entity liability policy. It is undisputed for purposes of this appeal that this insurance contract covered the County's defense in disciplinary proceedings relating to an employee of the Juneau County Sheriff's Department.[3]

---

[2] Additional parties are the Juneau County Star-Times' publisher, George Althoff, and the Juneau County Clerk, Kathleen Kobylski. For ease of reading, we will refer to the parties as the "Star-Times" and the "County."

[3] Details of the disciplinary matter are entirely irrelevant to this appeal, which focuses narrowly on the question of what the

¶ 4. The insurer retained the Crivello Carlson law firm (the law firm) in October 2008 to defend the County in connection with the disciplinary matter. The law firm, through attorney Michele Ford, generated invoices, that is, itemized bills for legal services, for its defense of the County and provided those invoices to the insurer.

¶ 5. The Star-Times sent a written request to the County, explicitly citing public records statutes, for "access to bills submitted for payment to Juneau County's insurer, the Wisconsin County Mutual Insurance Corp., by Michele Ford, or submitted by her law firm, Crivello Carlson, for services Attorney Ford rendered as counsel to Juneau County Sheriff Brent Oleson in the years 2008, 2009 and 2010." The law firm provided a response to this request directly to the Star-Times, which consisted of redacted copies of the invoices. The law firm's response stated that all of the redactions were to protect attorney-client privileged information or attorney work product. The County subsequently provided an additional written response to the Star-Times, adopting the law firm's response as its own.

¶ 6. The Star-Times filed a complaint against the County, alleging that the County violated the public records law by, among other things, adopting the redactions made by the law firm and releasing no records or portions of records beyond what the law firm released. Both parties moved for summary judgment. The parties disputed whether the invoices were subject to disclosure as public records under the relevant statutory provisions. In an alternative argument, the Star-Times

County is obligated to disclose to the Star-Times under the public records law and under the rules governing attorney-client privilege.

asserted that the County waived or forfeited any argument that the invoices are not public records subject to release under WIS. STAT. ch. 19, because the County failed to take such a position at the time the law firm produced the redacted versions, and in fact adopted the law firm's production as an appropriate response. Finally, as to the redactions themselves, the parties disputed whether, assuming that the invoices were subject to disclosure, the redactions were permissible.

¶ 7. The circuit court resolved each issue in favor of the County and granted summary judgment to the County, resulting in dismissal of the Star-Times' complaint. The Star-Times now appeals.

## DISCUSSION

¶ 8. We address two arguments that the Star-Times makes on appeal: (1) the circuit court erred in concluding that the "contractor's records" provision, WIS. STAT. § 19.36(3), does not apply to the invoices; and (2) the circuit court erred in concluding that the County's redactions qualified as attorney-client privileged information.[4]

---

[4] The Star-Times makes two additional arguments, but we need not reach either, given our resolution of other issues presented.

The first of these contentions is that the County waived or forfeited any argument that the invoices are not public records subject to disclosure by approving disclosure of the redacted invoices without claiming any exemption for the invoices as a whole. We need not reach this forfeiture argument because we agree with the Star-Times on the merits that the invoices are subject to disclosure under WIS. STAT. § 19.36(3).

The second of these contentions involves a suggestion by the Star-Times that two procedural irregularities in the

¶ 9. For the reasons that follow, we agree with the Star-Times' argument that WIS. STAT. § 19.36(3) applies to the invoices. We also conclude that the County failed to identify sufficient proof to survive summary judgment on the question of whether the redacted information in the invoices qualifies as attorney-client privileged.

## A. Whether WIS. STAT. § 19.36(3) Applies to the Invoices

■

¶ 10. The parties do not suggest that there are any conflicting facts or competing reasonable inferences that would have prevented summary judgment on the question of whether WIS. STAT. § 19.36(3) applies to the invoices. We agree and conclude that this issue involves a purely legal question as to the applicability of the statute. The application of a statute to undisputed facts is a question of law that we review de novo. *Seifert*

County's response to the Star-Times' records request were, either individually or in combination, sufficient to entitle the Star-Times to a writ of mandamus requiring the County to produce unredacted versions of the billing invoices: (1) that the law firm, and not the County, initially responded to the request; and (2) that neither the law firm's written response nor the County's written adoption of that response included the notification-of-rights language required under WIS. STAT. § 19.35(4)(b) ("Every written denial of a request by an authority shall inform the requester that if the request for the record was made in writing, then the determination is subject to review by mandamus under s. 19.37(1) or upon application to the attorney general or a district attorney."). We need not reach the question of whether, assuming the County did not comply with the terms of WIS. STAT. ch. 19 in these two respects, the remedy as a matter of law must be production of the invoices without redaction, because we determine for the other reasons explained in this opinion that the County is obligated to make available the unredacted invoices.

*v. School Dist. of Sheboygan Falls,* 2007 WI App 207, ¶ 16, 305 Wis. 2d 582, 740 N.W.2d 177.

¶ 11.　In addressing this legal question, we begin by observing that, when applying public records law provisions, we must consider the legislature's declared policy that "all persons are entitled to the greatest possible information regarding the affairs of government . . . ." WIS. STAT. § 19.31. "To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business." *Id.*

¶ 12.　A "record" is defined as certain information that *"has been created* or *is being kept* by an authority." WIS. STAT. § 19.32(2) (emphasis added). Here, the County is the "authority," and the Star-Times does not argue that the County created or kept the invoices. Rather, as indicated, the Star-Times argues that the "contractors' records" provision, WIS. STAT. § 19.36(3),[5] applies.

¶ 13.　This brings us to the core provision at issue. WISCONSIN STAT. § 19.36(3) states that an authority "shall make available for inspection and copying . . . any record *produced or collected under a contract entered into by the authority with a person other than an authority* to the same extent as if the record were maintained by the authority." (Emphasis added.) There is no dispute that the insurance contract that the insurer issued to the County is "a contract entered into by" the County. The

---

[5] WISCONSIN STAT. § 19.36(3) reads in full as follows:

CONTRACTORS' RECORDS.　Subject to sub. (12), each authority shall make available for inspection and copying under s. 19.35(1) any record produced or collected under a contract entered into by the authority with a person other than an authority to the same extent as if the record were maintained by the authority. This subsection does not apply to the inspection or copying of a record under s. 19.35(1)(am).

dispute involves whether the law firm's invoices were produced or collected under that contract.

¶ 14. Given the disjunctive phrasing of WIS. STAT. § 19.36(3), we must apply the statute to the invoices if the invoices were *either* produced *or* collected under the insurance contract. We conclude for the reasons that follow that the invoices were "collected under" the insurance contract by the insurer. We therefore need not address whether the invoices were also "produced . . . under" the contract.[6]

■

¶ 15. In interpreting and applying WIS. STAT. § 19.36(3), we observe initially that the statute, in using the phrase "collected under a contract," lacks specificity in at least two respects. First, it is in the passive voice,

---

[6] For this reason, we do not need to evaluate the arguments of the parties in light of an opinion of this court that is heavily relied upon by the Star-Times, *Journal/Sentinel, Inc. v. School Board of the School District of Shorewood*, 186 Wis. 2d 443, 521 N.W.2d 165 (Ct. App. 1994). In *Journal/Sentinel*, a public records requester sought a memorandum of understanding (MOU) between a school board and school superintendent that had been drafted and maintained by a law firm in the course of its representation of the school district. *Id.* at 445–46, 452. This court concluded that the MOU was a public record under WIS. STAT. § 19.36(3). *Id.* at 452–53. The court reasoned that (1) the MOU was "produced during the course of [the law firm]'s representation of the district, and was, in effect, the culmination of that representation," and (2) the nature of the attorney-client relationship meant that the law firm's actions "on behalf of the district were actions by the district for purposes of the public-records law." *Id.* at 452. The rationale of *Journal/Sentinel*, if applicable here, would appear to go primarily to the question of whether the invoices were *produced* under the County's insurance policy, not to the question of whether the invoices were *collected* under the policy.

failing to specify who may qualify as a collector of records. At a minimum, however, we conclude that this must include both any representative of the governmental body and any representative of the contracting party, here the insurer.

¶ 16. Second, the statutory language does not on its face make clear whether our focus should be on: (1) "collection" anticipated by the parties when they enter into the contract (here, the insurance contract), (2) "collection" that has in fact occurred in the course of any party's performance under that contract (regardless of whether it was anticipated), or (3) both. For purposes of this case, our conclusion is the same regardless of the focus.

¶ 17. We conclude that there is no reasonable argument that under the terms of the insurance contract the parties did not anticipate the insurer's collection of invoices from a law firm in the event that a defense was necessary. Under the contract, the County must send the insurer copies of any "demands, notices, summaries or legal papers received in connection with a claim or suit" and must cooperate with the insurer in "the investigation, settlement, or defense of the claim or suit." The insurer, in turn, must defend any suit against the County seeking damages on account of a covered occurrence and must pay defense costs. Such a mandatory obligation on the insurer to provide a defense will necessarily result in the insurer's collection of at least some documents (for example, the County's forwarded copies of claims). As most relevant to this appeal, it is a certainty that, in the event that the insurer provides a defense through a law firm, the insurer will receive some form of an invoice or invoices from any law firm retained.

¶ 18. Turning to what in fact occurred in this case, there is no dispute that the law firm provided to the insurer copies of invoices of the type anticipated by the insurance contract.

■

¶ 19. In sum, we are satisfied that the invoices were "collected" by the insurer "under" the contract within the meaning of WIS. STAT. § 19.36(3), based on the terms of the County's insurance contract, the certainty of what must occur under such a contract, and what actually occurred as a result of the County's insurance contract and its request for a defense.

¶ 20. The term "collect" in itself presents no difficulty. While WIS. STAT. ch. 19 does not provide a definition of the term "collect," the particular transitive verb form clearly intended here means "to bring together into one ... place." Merriam–Webster Dictionary, *http://www.merriam-webster* (last visited 10/24/2011). It cannot reasonably be argued that the insurer did not "collect" the invoices by bringing them together at the insurer's place of business.

¶ 21. We acknowledge some uncertainty as to the outer bounds of what the legislature intended by the entire phrase, "collected under a contract." However, we need not define the outer bounds of the statute to resolve this appeal. The statute is not written so narrowly as to require that the government contract be *for the purpose of* collecting the records in question. The legislature could have easily chosen different language to express that concept. Instead, the legislature used passive language and relatively broad terms, directing without limitation that records "collected under the contract" must be disclosed.

¶ 22. Moreover, as we have indicated, we must construe these broad statutory terms "with a presump-

tion of complete public access, consistent with the conduct of governmental business." Wis. Stat. § 19.31. To the extent that there could be any ambiguity as to whether the invoices were collected under the County's insurance contract, the presumption favors our conclusion that they were. This presumption points toward "complete public access" to records directly involving the County's handling of the underlying disciplinary matter, except where a recognized privilege or other exception to the public records law is validly asserted.

¶ 23. The County argues that the invoices were not collected under the insurance contract but instead under whatever contract or agreement existed between the law firm and the insurer. However, the County does not explain *why* the invoices must be considered collected under that contract instead of the contract between the County and the insurer, or, for that matter, why the invoices might not have been collected under both contracts.

¶ 24. We understand that the County also makes a more nuanced argument, based on the fact that an insurer in these circumstances acts in some respects as an intermediary between the insured and the law firm retained to defend the insured, and the insured does not directly pay the law firm. The County's argument may be summarized as follows:

- Under the insurance contract, the County contracted only for insurance coverage, not for legal services, and it pays a premium and deductible, not attorney's fees;

- Although the County and the law firm may have had an attorney-client relationship as a result of the insurance contract, the insurer and not the County had the right under the contract to control the defense;

722

- There is only an indirect relationship between the law firm's fees in this matter and actual costs borne by the taxpayers of Juneau County (i.e., one cannot draw a dollar-for-dollar connection between County funds and compensation to the law firm);

- Therefore, the County concludes, the invoices were not collected (or produced) under the insurance contract, and disclosure of the invoices would not serve the purposes of the public records law because the invoices have no direct relationship to public expenditures.

¶ 25. While the County's premises may be accurate, as far as they go, we disagree that they lead to the County's conclusions. Nothing about the relationship among an insured, insurer, and insurance defense counsel, as governed by the terms of the insurance contract, suggests that defense counsel's invoices, when received by the insurer, are not "collected under the [insurance] contract." Additionally, there is no requirement under the public records law generally, or under WIS. STAT. § 19.36(3) specifically, that there must be a dollar-for-dollar match between tax revenue and expenditures related to requested records, or indeed that requested records bear any relationship to identified public expenditures, before access to the records can meet the goals of the law.

¶ 26. Finally, we reject the County's reliance on *Building & Construction Trades Council v. Waunakee Community School District*, 221 Wis. 2d 575, 585 N.W.2d 726 (Ct. App. 1998). In that case, the documents sought by a public records requester were payroll records for employees of two private subcontractors helping to construct a public building. *Building & Constr. Trades Council*, 221 Wis. 2d at 578. At issue, as here, was whether WIS. STAT. § 19.36(3) applied to the

records sought. *See id.* at 579–80. This court concluded that § 19.36(3) did not apply. *Id.* at 585.

¶ 27. The County argues that the following reasoning from *Building & Construction Trades Council* is dispositive:

> [Section] 19.36(3), STATS., plainly addresses contracts between the "authority"—here the District—and the party whose records are being sought .... But [the requester] is not seeking any records produced or collected under the District's contract with [the general contractor]. Its request goes to another level entirely: It seeks information that [the] subcontractors—which, like [the general contractor], are private, rather than public, entities—produced for their own independent purposes. And it offers as grounds for such access not the contract between the District and [the general contractor]—which is the only contractual relationship specified in § 19.36(3)—but the separate contracts between [the general contractor] and its subcontractors.
>
> The [requester] has not provided us with any authority that would bridge the gap between (a) the requirement in § 19.36(3) that the District disclose records produced or collected under its contract with [the general contractor], and (b) the records it seeks, which are, as indicated, the payroll records of two companies [which] had entered into subcontracts with [the general contractor]—subcontracts to which the District is not a party.

*Id.* at 580–81. For at least two reasons, we do not agree with the County that this reasoning controls here.

¶ 28. First, we concluded in *Building & Construction Trades Council* that WIS. STAT. § 19.36(3) was inapplicable, at least in part, because the requester relied on "the separate contracts between [the general contractor] and its subcontractors." *Id.* at 581. Those contracts, to which the school district was not a party,

724

could not be a "contract" as referenced in § 19.36(3). Here, the only contract on which the Star-Times relies is a contract to which the County is a party, namely the County's insurance contract. To frame our analysis in the terms used by the court in *Building & Construction Trades Council*, the Star-Times has "bridge[d] the gap between (a) the requirement in § 19.36(3) that the [County] disclose records . . . collected under its contract with [the insurer], and (b) the records it seeks[,]" by demonstrating that the invoices were collected under the County's insurance contract. *See id.*

¶ 29. Second, the court in *Building & Construction Trades Council* reasoned that the records sought were "produced for [the subcontractors'] own independent purposes." *Id.* The court apparently viewed this fact as a reason why the records could not have been produced *or collected* under the contract between the school district and its general contractor. The payroll records included the "names, addresses and telephone numbers of each employee; the classification/trade/occupation of each employee; the number of hours worked by each employee and the wages and benefits earned by each employee." *Id.* at 578. Implicit in the court's reasoning is that the subcontractors would have maintained much of this information regardless of any particular contract, and that the primary purpose of that information was not in furtherance of any contract with the school district. The same cannot be said about the invoices here. Although the law firm may have produced the invoices, in part, for its own purposes, there would be no invoices without the County's insurance contract. Moreover, the invoices were created to reflect the law firm's direct legal representation of the County in a matter of obvious potential public interest.

¶ 30. For all of the reasons stated, we conclude that WIS. STAT. § 19.36(3) applies to the invoices.

## B. Whether the Redacted Information is Attorney-Client Privileged

¶ 31. Having concluded that WIS. STAT. § 19.36(3) applies to the invoices, we next address the Star-Times' argument that the circuit court erred in concluding that the material the County redacted in these public records was covered by the attorney-client privilege. For the reasons discussed below, we conclude that the court erred in granting summary judgment to the County, and that, based on the summary judgment record, the court should have reached the opposite conclusion, namely, that the Star-Times, in its motion for summary judgment, presented a prima facie case that the redactions were not privileged, and that the County failed to point to facts sufficient to create a material factual dispute on the privilege issue.

¶ 32. The parties agree that, under WIS. STAT. §§ 19.35(1)(a) and 19.36(1), and *Wisconsin Newspress, Inc. v. School District of Sheboygan Falls*, 199 Wis. 2d 768, 782–83, 546 N.W.2d 143 (1996), information that is otherwise accessible under the public records law may be redacted if it is attorney-client privileged.

██

¶ 33. As an authority seeking to redact information from records that are otherwise accessible under the public records law, the County has the burden to show that the redactions are justified. *See Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979) ("The custodian of the records must satisfy the court that the public-policy presumption in favor of disclosure is outweighed by even more important

public-policy considerations."); *Dyer v. Blackhawk Leather LLC*, 2008 WI App 128, ¶ 8, 313 Wis. 2d 803, 758 N.W.2d 167 ("The party asserting the [attorney-client] privilege has the burden to show that it applies.") (citation omitted).

### 1. *Circuit Court's Rulings*

¶ 34. After an in camera inspection of unredacted copies of the invoices, the circuit court concluded that they contain "detailed descriptions of the nature of the legal services rendered to Juneau County" and that "[p]roducing these billing records would, therefore[,] reveal the substance of lawyer-client communications and fall within the purview of the lawyer-client privilege." Therefore, the court concluded, the County permissibly redacted the invoices. The court's conclusions in this regard were general; the court did not explain by category or description how any particular invoice or any portion of any invoice qualifies as privileged.

### 2. *Standard of Review*

■

¶ 35. As a preliminary matter, the parties dispute the standard of review that applies to the circuit court's redaction rulings. The County argues that the circuit court's conclusions that the invoices contain "detailed descriptions of the nature of . . . legal services" and that "[p]roducing these billing records would . . . reveal the substance of lawyer-client communications" are fact findings that we must uphold unless clearly erroneous. We agree with the Star-Times, however, that our standard of review is de novo because the circuit court decided this case on summary judgment. *See Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct.

App. 1994) (court of appeals follows same methodology as circuit court in de novo appellate review of a circuit court decision to grant summary judgment).

### 3. Application of Attorney-Client Privilege

¶ 36. The attorney-client privilege is narrowly construed, because the privilege is "an obstacle to the investigation of the truth." *Lane v. Sharp Packaging Sys., Inc.*, 2002 WI 28, ¶ 21, 251 Wis. 2d 68, 640 N.W.2d 788 (citation and internal quotation marks omitted). It protects communications from the attorney to a client only if disclosure of the attorney-to-client communications would directly or indirectly reveal the substance of the client's confidential communications to the attorney. *Id.*, ¶ 40; *Journal/Sentinel, Inc. v. School Bd. of the School Dist. of Shorewood*, 186 Wis. 2d 443, 460, 521 N.W.2d 165 (Ct. App. 1994).

¶ 37. Billing records are communications from the attorney to the client, and therefore revealing the records may violate the attorney-client privilege, but only if the records " '*would directly or indirectly reveal the substance of the client's confidential communications to the lawyer.*' " *See Lane*, 251 Wis. 2d 68, ¶ 40 (quoting *Journal/Sentinel*, 186 Wis. 2d at 460) (emphasis added). In *Lane*, the court held that producing attorney billing records would reveal the substance of such confidential client communications if the records "contain detailed descriptions of the nature of the legal services rendered." *Id.*, ¶ 41. The court did not further define what constitutes a "detailed" description of the "nature" of legal services rendered. However, it is apparent that what the court meant was that the descrip-

tions must be detailed in a way that would directly or indirectly reveal the substance of a confidential client communication. The court explicitly declined to establish "a broad rule that all attorney billing records are protected by the lawyer-client privilege." *Id.*

¶ 38. The approach in *Lane* is consistent with the approach of many jurisdictions that have rejected the argument that "descriptive billing entries are *per se* privileged from disclosure under the attorney-client privilege." *Hampton Police Ass'n, Inc. v. Town of Hampton*, 20 A.3d 994, 1001 (N.H. 2011). These jurisdictions reject blanket assertions of the privilege in this context, and more specifically, "generally agree that billing statements that provide only general descriptions of the nature of the services performed and do not reveal the subject of confidential communications with any specificity are *not* privileged." *Id.*

¶ 39. The parties here do not argue that there is a genuine issue of material fact that should have prevented summary judgment on the question of whether the redacted information is protected as attorney-client privileged. Rather, each party argues that it was entitled to judgment as a matter of law on that question. We agree with the Star-Times for the reasons that follow.

¶ 40. So far as we can discern from the record and briefing, the only evidence the County relied on, in arguing to the circuit court that the redactions were necessary to protect the privilege, consisted of the presentation to the court of redacted and unredacted versions of the invoices along with the law firm's initial response to the Star-Times' request. The invoices consist of a total of twenty-seven pages. Each page contains redactions, and many pages are redacted extensively. The law firm's response, adopted by the County, did not

purport to explain redactions by category or type, nor attempt to justify the redactions except through broad assertions.[7]

¶ 41. Our review of the unredacted versions of the invoices reveals that many of the redacted portions are descriptions of legal services rendered, the category of information addressed by *Lane*. Other redacted portions of the invoices include case file numbers, a tax ID number, a billing number, photocopy dates and prices, outside printing dates and prices, the number of attorney hours (or portions of an hour) worked on a given date, attorney rates and total hours worked by particular attorneys, and, in some instances, the identity of the attorney performing particular work.

■

¶ 42. The County's position, adopted on a wholesale basis by the circuit court, is that each piece of redacted information, without differentiation or explanation, is sufficiently "detailed" within the meaning of *Lane* so as to reveal the substance of confidential communications by the County to the attorneys. We disagree that this blanket assertion of privilege as to all redactions is adequate to survive summary judgment.

---

[7] The County submitted the unredacted versions under seal and, as already indicated, the circuit court reviewed these in camera. The unredacted invoices are included in the record on appeal, still in "under seal" status and unavailable to the Star-Times. We have reviewed them. The Star-Times challenged the claims of privilege, even though it was not privy to the material claimed to be protected by the privilege doctrine; in other words, the Star-Times stood on its right to require the County to prove that the redacted material is privileged. In doing so, the Star-Times cited to relevant legal standards, discussed in the text, that disallow blanket claims of privilege for attorney billing records.

¶ 43. The unredacted invoices and the blanket assertions of privilege made by the law firm and the County do not in and of themselves make out a prima facie case for the County that any of the redacted information reveals the substance of a privileged communication. On the contrary, we conclude based on our review of the unredacted invoices that the invoices, on their face, do *not* reveal the substance of privileged communications. And, once the Star-Times has established a prima facie summary judgment case, the County "must, by affidavits or other statutory means, set forth specific facts showing that there exists a genuine issue requiring a trial." *See Bank of Two Rivers v. Zimmer*, 112 Wis. 2d 624, 632, 334 N.W.2d 230 (1983).

¶ 44. Turning to whether the County has overcome the Star-Times' prima facie case, in the absence of specific proofs or arguments from the County on this topic, we are left to glean what we can from the face of the unredacted versions of the invoices alone, without further explanatory evidence or argument. As is evident from the discussion above, much of the redacted information could not, under any stretch of the imagination, suggest anything of a privileged nature that involves confidential client communications.

¶ 45. We note that there is a small subset of redacted legal descriptions that gives us momentary pause. This subset involves descriptions of legal services that the law firm provided to the County that allude to topics of legal research conducted on a particular date, or that allude to the general fact that legal strategies were considered on a particular date (without specifying the particular strategy). We acknowledge that it is theoretically possible that, with explanation or additional information, the County might have been

able to make an argument that one or more of these descriptions could reveal the substance of confidential communications.

¶ 46. However, we are left without any such explanations or additional information. The County made no attempt to identify for the circuit court why the court should conclude that any particular description of legal services would reveal the substance of confidential communications directly or indirectly, and for that matter makes no such attempt now on appeal. Instead, the County simply provided the unredacted invoices to the court and made a blanket assertion of privilege for all redacted information. This was inadequate. *See Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("privilege must ordinarily be raised as to each record sought to allow the court to rule with specificity") (citation omitted); *see also Salas v. United States*, 695 F.2d 359, 362 (9th Cir. 1982) ("blanket assertions of privilege . . . are extremely disfavored"); *City Pages v. State*, 655 N.W.2d 839, 847 (Minn. Ct. App. 2003) (parties claiming attorney-client privilege must show its application to particular narrative statements in billing records).

¶ 47. In sum, the County failed to point to evidence sufficient to survive summary judgment on the issue of its justifications for redacting each specific piece of information redacted from these public records, therefore entitling the Star-Times to summary judgment on this issue.

■■■

¶ 48. As a final point, we note that the parties dispute whether the County forfeited before the circuit court any argument that the redacted information is protected not by the attorney-client privilege, but instead by the attorney work product doctrine, by alleg-

edly failing to sufficiently raise that argument below.[8] It is true that the record reflects that the County did not clearly frame a work product argument to the circuit court, and, likely as a result, the circuit court did not even refer to work product in addressing the County's defense of its redactions. However, we need not resolve the issue of potential forfeiture in the circuit court because the County has not developed a work-product-related argument on appeal. Accordingly, we need not address, and take no position on, whether any redactions could qualify as attorney work product. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (appellate court need not consider issues that are inadequately briefed or arguments not supported by legal authority).

## CONCLUSION

¶ 49. For the above stated reasons, we reverse the circuit court judgment and remand for the circuit court to order the County to make unredacted copies of the invoices available to the Star-Times.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[8] Attorney work product includes "material, information, mental impressions and strategies an attorney compiles in preparation for litigation." *Seifert v. School Dist. of Sheboygan Falls*, 2007 WI App 207, ¶ 28, 305 Wis. 2d 582, 740 N.W.2d 177.